S03G0360. DRAWDY v. DIRECT GENERAL INSURANCE
COMPANY.
(586 SE2d 228)

HUNSTEIN, Justice.

We granted certiorari in this insurance case to consider the pro-

cedural question whether an automobile insurer, after expressly denying coverage without qualification or conditions, may bring an action for declaratory judgment to determine its contractual duties to its insured when no litigation is pending against the insured at the time the declaratory judgment action is filed but the insurer thereafter provides a defense to the insured under a reservation of rights. See *Direct General Ins. Co. v. Drawdy*, 258 Ga. App. 149 (1) (572 SE2d 629) (2002). For the reasons that follow, we hold that dismissal of an insurer's declaratory judgment action is proper under these circumstances and accordingly reverse the contrary ruling in the Court of Appeals.

David Drawdy was insured by Direct General in September 1999 when Drawdy's nephew, while driving Drawdy's car, collided first with a vehicle owned by Billy Niles, then fled from police pursuit and crashed into a tree, killing his passenger, Chandler. The following month after investigating the matter, Direct General unconditionally denied all coverage under the policy for the collisions[1] and communicated its decision by letters to Drawdy's nephew and counsel for Chandler's family and estate (hereinafter "Chandler").

Nearly a year after the accident, in August 2000, Direct General filed a complaint seeking a declaration that it had no duty to indemnify or defend Drawdy or his nephew. No tort action arising out of the collisions had been filed at that time and the complaint expressly stated that Direct General had expressly denied coverage.[2] After raising the absence of an actual controversy in his responsive pleadings, Drawdy moved in September 2001 to dismiss the declaratory judgment action on the basis that it failed to state a claim upon which relief could be granted. In its response brief to Drawdy's motion, Direct General asserted that Chandler brought suit against Drawdy a week after the dismissal motion was filed;[3] the insurer attached to its brief a copy of the suit, which was filed in a different court in the same county. Direct General did not assert in its brief that it was providing a defense for Drawdy under a reservation of rights, although it appears from the briefs of the parties on appeal that the insurer thereafter did so. The trial court granted Drawdy's

---

[1] The body of the letter provided that

We have denied this claim because our investigation reveals that [the insured's nephew] drove David Drawdy's vehicle without [his] knowledge and permission at the time of the above referenced accident.

The letter then set forth the policy language on which Direct General relied and its location within Drawdy's policy. The letter concluded with the statement, "[t]herefore we must respectfully deny the above referenced claims."

[2] Copies of the letters unconditionally denying any coverage that Direct General sent to Drawdy's nephew and Chandler were attached as exhibits to its declaratory judgment complaint.

[3] The suit was filed two weeks before the expiration of the statute of limitation.

motion to dismiss in December 2001.

The Court of Appeals erred by reversing the trial court's ruling. The purpose of the Declaratory Judgment Act is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." OCGA § 9-4-1. The law is well established that "declaratory judgment is not available where a judgment cannot guide and protect the petitioner with regard to some future act — as where an insurance company has already denied a claim. [Cits.]" *Atlanta Cas. Co. v. Fountain*, 262 Ga. 16, 18 (413 SE2d 450) (1992). That is because declaratory judgment is not available to a party merely to test the viability of its defenses. *Morgan v. Guaranty Nat. Cos.*, 268 Ga. 343, 345 (489 SE2d 803) (1997). Direct General having already denied coverage for the claims at issue here, declaratory judgment was not available because it was neither uncertain nor insecure in regard to its rights, status or legal relations. See *Adams v. Atlanta Cas. Co.*, 225 Ga. App. 482 (1) (484 SE2d 302) (1997). See also Jenkins & Miller, Georgia Automobile Insurance Law (2001 ed.), § 9-1.

Nothing in *Colonial Ins. Co. v. Progressive Cas. Ins. Co.*, 252 Ga. App. 391 (1) (556 SE2d 486) (2001), relied upon by the Court of Appeals, supports a contrary ruling. In *Colonial*, the insurer sent the insured a "qualified denial letter," but thereafter undertook the insured's defense under a reservation of rights *before* seeking a declaratory judgment. See also *State Farm &c. Ins. Co. v. Allstate Ins. Co.*, 132 Ga. App. 332, 335 (208 SE2d 170) (1974). As *Colonial* recognized, "[h]ad [the insurer] simply rested on its denial of coverage, it could not have sought a declaratory judgment." Id. at 393. Here, Direct General denied coverage without qualification. No suit was filed against its insured or defense undertaken under a reservation of rights prior to the filing of the declaratory judgment action. *Colonial* and *State Farm* are thus distinguishable on their facts.

We reject the Court of Appeals' position that this case is comparable to *Colonial* merely because Chandler's wrongful death action against Drawdy was fortuitously filed prior to the trial court's ruling on Drawdy's motion to dismiss the declaratory judgment action. Under *Colonial* an insurer is not estopped from changing its position after an initial denial of coverage and is allowed to seek declaratory judgment in those situations where the insurer has both indicated its willingness to reconsider its insured's claim and has positively demonstrated that it considers the question of coverage to still be in issue, e.g., by undertaking a defense of its insured under a reservation of rights. By acting in this manner, the insurer eliminates any detriment to the insured that might result because of the insurer's reassessment of the initial denial. Id. at 393. In contrast, Direct General provided its insured with an unconditional and unqualified

denial of coverage. "Once the [insurer] denies coverage, insureds know that they are on their own and that they cannot rely on the insurer." 1 Allan D. Windt, Insurance Claims & Disputes, § 2.24, p. 79 (3rd ed. 1995). Moreover, when it sought declaratory judgment nearly a year after the claim arose, Direct General had done nothing to indicate that " '[t]he question of coverage [was] still in issue.' " (Footnote omitted.) *Colonial*, supra at 393. Rather, despite the fact that Direct General was under "no uncertainty as to future acts and thus [had] no need of direction from the court," id. at 392-393, it nevertheless required its insured to act to his detriment by putting him through the expense and trouble of defending the declaratory judgment action and responding to discovery. Compare id. (insured " 'suffered no detriment of which it can complain as a result of [the insurer's] reassessment of its legal position' "). *Colonial* thus does not support the Court of Appeals' ruling that Direct General's declaratory judgment action was validated by Chandler's subsequent filing of the tort suit against Drawdy.

We also agree with Drawdy that policy reasons support dismissal of Direct General's declaratory judgment action. "An insurer 'may not refuse to pay (under its policy) and then use declaratory judgment procedure as a means of avoiding bad faith penalties.' [Cit.]" *Morgan*, supra, 268 Ga. at 344. The Court of Appeals' ruling encourages insurers to unconditionally deny claims, based on the calculated risk that an uninformed insured or tort plaintiff may be discouraged thereby from contesting the issues, with the insurers secure in the knowledge that bad faith penalties for their course of conduct may be avoided or minimized by the filing of a declaratory judgment action. While the Declaratory Judgment Act is to be liberally construed and administered, OCGA § 9-4-1, and its purpose is to protect parties, *Mayor &c. of Athens v. Gerdine*, 202 Ga. 197 (1) (42 SE2d 567) (1947), that protection is from uncertainty with respect to future conduct, id., not from the adverse consequences of actions already undertaken.

We therefore hold that the Court of Appeals erred by reversing the trial court's dismissal of Direct General's declaratory judgment action.

*Judgment reversed. All the Justices concur.*

DECIDED SEPTEMBER 15, 2003.

*Buchanan & Land, Benjamin A. Land, Oriana Senatore, Patrick J. Araguel, Jr., Page, Scrantom, Sprouse, Tucker & Ford, Virgil T.*

*Theus*, for appellant.
*Swift, Currie, McGhee & Hiers, H. Lee Pruett*, for appellee.